Mark Zavislak
1600 Amphitheatre Parkway
Mountain View, CA 94043
Phone: +1 650 714 2075
Email: service@markzavislak.com
*Pro Se*

E-FILING

Filed
OCT 2 9 2014
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

Mark Zavislak,

    *Plaintiff,*

v.

Google Inc. Welfare Benefit Plan,

    *Defendant.*

Case No. CV 14 . 04802 NC

**ERISA COMPLAINT**

**Jurisdiction**

1. Plaintiff Mark Zavislak is a participant and beneficiary of the Google Inc. Welfare Benefit Plan (the "Plan"), the Defendant, which is governed under the Employee Retirement Income Security Act of 1974 ("ERISA").

2. Plaintiff seeks to recover benefits due to him under the terms of the Plan, to enforce his rights under the terms of the Plan, and to clarify his right to future benefits under the terms of the Plan.

3. Plaintiff filed an internal appeal of the claims at issue in this action on September 18, 2014. Plaintiff was informed by email on October 3, 2014 that his appeal was denied. Plaintiff received a letter on October 10, 2014 confirming the denial of the appeal, the exhaustion his mandatory appeal rights, and his "right to bring a civil action in federal court under section 502(a)(1)(B) of ERISA."

1

Complaint

4. The Plan is administered by Google Inc., having the address 1600 Amphitheatre Parkway, Mountain View, California 94043, which is located within the Northern District of California.

5. This Court has jurisdiction pursuant to 29 U.S.C. Section 1132(e)(1).

6. Venue of this action lies in the Northern District of California pursuant to 29 U.S.C. Section 1132(e)(2), because at all relevant times the Plan was administered in Mountain View, California.

## Claims For Relief

7. Plaintiff is both a subscriber and beneficiary of the Plan defendant in this action. Plaintiff has been a subscriber and beneficiary of the Plan since January 1, 2013. Also since January 1, 2013, Plaintiff has been a subscriber and beneficiary of the "gHIP PPO" benefit (the "Benefit") offered by the Plan. Similarly, Plaintiff's spouse is both a subscriber and beneficiary of the Plan defendant in this action. She has been a subscriber and beneficiary of the Plan since January 1, 2013, and a subscriber and beneficiary of the Benefit.

8. At all relevant times Anthem Blue Cross Life and Health Insurance Company with Blue Cross of California performing administrative services on its behalf (collectively "Anthem") served as the claims administrator for the Benefit under the policy, and Google Inc. (the "Administrator") served as the plan administrator.

9. Both Plaintiff and his spouse are employees of Google Inc. Both Plaintiff and his spouse are subscribers of the Plan in this action, and both paid premiums for the Benefit for family coverage.

10. At all relevant times Plaintiff was and remains both a subscriber and a beneficiary (through his spouse) of the Plan.

11. The dispute in this action concerns the method by which the Plan allocates payment responsibilities between the Plan and the participants.

12. Since January 1, 2013, Plaintiff submitted several claims for benefits according to the Plan's procedures. From January 1, 2013 until March 21, 2014, as far as Plaintiff is aware, Anthem processed all of Plaintiff's claims in conformance with the terms in conditions of the Plan as set forth in the relevant Summary Plan Description ("SPD"), Benefits Booklet, and formal Plan documents.

13. At some point prior to March 21, 2014, Anthem began to implement a change in the method by which it processes certain claims under the Benefit. This change in methodology relates to claims for which the Plan is not the "primary plan" (i.e., it is the "secondary plan") as defined by the SPD. Anthem has refused to disclose any documentation about the timing of or the reason for the change in response to Plaintiff's inquiries. Anthem does not contend that the change was justified by any concurrent amendment to the Plan.

14. The SPD provides for what is known in the industry as "standard coordination" when multiple plans cover the same individual. First, the SPD defines rules for determining whether a given Plan is the "primary plan." For example, the first rule is that "If the other plan does not have a coordination of benefits provision, it is the primary pan [sic]." The second rule is that "If the first plan covers a person as other than a dependent and the second plan covers such person as a dependent, the first plan is the primary plan, where permitted by law." The third rule is that "If both plans covers a dependent, the plan of the enrollee whose birthday occurs earlier in the calendar year is the primary plan." The SPD then specifies that the primary plan pays first without regard to the secondary plan, but that in no case will the plan participant be entitled to benefits totaling more than 100% of the covered charges incurred.

15. Plaintiff timely submitted and continues to timely submit separate claims for benefits under the Plan as both a subscriber and beneficiary, such that the Plan acts as both the primary and secondary plan under the coordination of benefits rules described above.

16. Under Plaintiff and his spouse's subscriptions to the Plan, there is a $2,500 "family deductible," toward which covered expenses are ordinarily applied on behalf of all family members, in accordance with the Benefits Booklet: "All family members contribute towards the family deductible." Secondary claims presented to the Plan for coverage, assuming they are allowed, are applied to the secondary deductible as well as to the primary deductible, in accordance with the Benefits Booklet and SPD. Otherwise, the net effect would be that two married spouses who happen to both have family high-deductible health plan (HDHP) coverage would pay twice the out-of-pocket deductible for family medical expenses than they would if only one had family HDHP coverage.

17. The core dispute in this action arises because Anthem contends that a subset of Plaintiff's claims, namely allowable secondary claims presented for coverage, do not count toward the family deductible for the secondary plan.

18. To be clear, Anthem does not dispute that Plaintiff's claims are allowable expenses whether the Plan is acting as primary or secondary. However, Anthem now insists that, for the purposes of family coverage, certain secondary claims from family members do not count against the $2,500 family deductible required under the policy. This was not the rule Anthem applied in 2013. Anthem only disclosed this new rule in October of 2014 in response to an appeal filed by Plaintiff.

19. Evidence of Anthem's furtive decision to change the way it applied amounts to the family deductible surfaced for the first time in a pair of benefit determination letters issued to Plaintiff on March 21, 2014. These benefit determination letters referenced claims submitted to Anthem for

Complaint

medical services rendered on one particular day, March 11, 2014—both for Plaintiff's minor son, both from the same medical services provider, both seeking coverage where the Plan was the secondary plan, and both were fully allowed. The only material difference between the letters, other than the amounts, was a three digit code. One specified code 976, with the corresponding explanation, "THIS AMOUNT HAS BEEN APPLIED TO THE MEMBER'S DEDUCTIBLE/OUT OF POCKET" in accord with the way Plaintiff's claims had been treated for over a year. The other specified code 010, which Anthem explained meant, "THIS AMOUNT IS NOT PAYABLE DUE TO COORDINATION OF BENEFITS WITH THE MEMBER'S OTHER CARRIER." The code 010 determination was adverse to Plaintiff because, despite allowing the claim in its entirety, Anthem did not credit the allowed amount against the deductible.

20. Anthem did not explain why two claims for the same patient, for allowable medical services rendered on the same day, and seeking coverage under the same policy were treated differently. Anthem did not give Plaintiff any notice that its methodology for processing claims had changed. In addition, the explanation provided to Plaintiff, that the amount was not payable due to "coordination of benefits with the member's other carrier," was false or misleading. The Plan's coordination of benefits provision in the SPD did not support Anthem's adverse determination. Anthem did not cite to specific provisions of the SPD or the Plan document in its appeal determination letter.[1]

21. Over the next several months Anthem inconsistently issued benefit determination documents. Benefits determinations issued on April 9 and May 1 indicated via code 976 that amounts were applied the deductible, but the majority of determinations adversely indicated code 010. As

---

[1] See paragraph 30, *infra*.

before, Anthem did not indicate that its methodology for processing claims had changed, and did not explain why similarly situated claims were being processed differently. Again, Anthem does not dispute that all the claims at issue here are otherwise allowable. The only dispute is whether secondary claims can be credited against the secondary plan's deductible.

22. Plaintiff eventually discovered that he was being required to pay out-of-pocket amounts well in excess of the contracted deductible. Plaintiff contacted Anthem on September 17 to ask for an explanation. An Anthem representative reviewed the claims but was unable to explain why the benefit determinations were adverse. She offered to research the issue further over the coming days.

23. On September 18, Plaintiff filed a formal appeal with Anthem with respect to all claims denied under code 010 or the equivalent under both policies.

24. On September 19, an Anthem representative informed Plaintiff that she sent the claims back to the claims department for reprocessing "to apply to the deductible" (presumably correctly under code 976) and escalated to her manager to find out why that was not happening originally.

25. But instead, on September 25 in a Kafkaesque turn of events, Anthem began retroactively issuing adverse benefit determinations for claims that Anthem had previously determined favorably toward Plaintiff. For example, the March 21, 2014, benefit determination described above originally credited to Plaintiff's deductible under code 976 was replaced by a September 25, 2014, benefit determination letter that unfavorably specified code 010 instead.

26. On October 3, Anthem informed Plaintiff that his appeal was denied. Anthem asserted that, "Their [the claims department's] decision is based on an IRS regulation on Health Savings Accounts (HSAs, (Ghip [sic] plan) that says if a primary coverage policy covered the claim as part of

your benefits that applied to the deductible, then the secondary plan cannot also apply the claim to the deductible."

27. That same day, Plaintiff requested the IRS regulation Anthem relied upon and all other documents, records, and other information relevant to Plaintiff's claim, and specifically requested documentation about when and why this new methodology was implemented.

28. On October 7, Anthem provided Plaintiff what its agents described as "the policy information on the Coordination of Benefits," but which was actually a training PowerPoint slide deck from Wellmark Iowa dated June 13, 2012. (Plaintiff has no relationship with Wellmark Iowa.) Plaintiff asked why the document was relevant to his claim denial. Anthem responded, "They [the claims department] quoted the IRS regulation from that document that I emailed you earlier. I am still researching the page that they quoted from."

29. On October 8, Anthem provided Plaintiff with Member Claim Summaries and Summary Plan Descriptions from 2013 and 2014. The IRS regulation that Anthem relied upon in its adverse benefit determination was nowhere to be found, as acknowledged by Anthem's agent: "I am still asking the Claims department and the Operations department for help on where the IRS regulation quote came from."

30. On October 10, Plaintiff received the formal adverse benefit determination appeal by mail. The only reasoning Anthem cited in support of its adverse determination was the following: "According to the information I have available, if your secondary insurance coverage is an HSA based plan, any amount that is applied toward the deductible on your primary policy will not also apply toward your deductible on your secondary policy." Plaintiff again requested a copy of the information that the appeals analyst had relied upon or considered in making the adverse benefit determination.

Complaint

31. On October 14, Plaintiff once more requested all documents relevant to Plaintiff's claim. Plaintiff directed Anthem's attention to its own Benefits Booklet, which in relevant part states that Plaintiff is entitled to copies of "any internal rule, guideline, protocol, or other similar criterion relied upon in making the claim determination." Anthem responded that it will not provide Plaintiff copies of any internal documents.

32. On October 24, 2014, Anthem provided Plaintiff full copies of IRS Pub. 969, IRS Rev. Rul. 2004-45, IRS Notice 2004-50, and the Plan's Summary Plan Description. In a letter dated October 27, 2014, drafted in anticipation of litigation, Anthem purported to revise its earlier final determination to cite to IRS documents. These documents either support Plaintiff's position, e.g., Internal Revenue Code § 223(c)(2), which defines "high deductible health plan" in a manner that contradicts Anthem's interpretation, or are irrelevant. Irrelevant citations by Anthem in its revised appeal determination include IRS Publication 969 ("page nine") which discusses various inapposite HSA regulations; Internal Revenue Bulletin 2004-27 ("third paragraph"), mentioning in a background section how certain state mandated low-deductible plans (not at all descriptive of Plaintiff's subscription) are not HDHPs; Internal Revenue Bulletin 2004-22 ("Situation One"), which sets forth a hypothetical example (where an individual is covered simultaneously by an HDHP, a health flexible spending arrangement, and a health reimbursement arrangement) that does not match or accurately describe Plaintiff's subscription or status as a beneficiary under the Plan; and Internal Revenue Bulletin "2004-23" [*sic*, apparently should be 2004-33] ("Q&A 20 and 38"), which relate to IRS-mandated out-of-pocket maximums and distributions from HSAs, respectively.

33. Not one page of the one-hundred-plus pages of documents cited by Anthem supports Anthem's adverse determination. Where Anthem provided citations to portions of the above

documents in support of its adverse determination they either contradict Anthem's reasoning or are irrelevant. Anthem's revised final benefits determination letter confirms that Anthem's earlier representations that it was quoting from an IRS regulation were either false, or at best specious. Furthermore, Anthem's failure to find support in the Plan's coordination of benefits clause confirms that nothing in the Plan's coordination of benefits rules prohibits applying the amounts in the disputed claims against the deductible.

34. In its appeal determination, Anthem also failed to cite to and discuss relevant portions IRS publications that contradicted its position, even when it cited the publications for other irrelevant purposes. For example, Internal Revenue Code § 223(c)(1), which defines the term "eligible individual" with respect to health savings accounts, specifically permits individuals to be covered under multiple high deductible health plans and remain eligible individuals, even those "which provide[] coverage for any benefit which is covered under the high deductible health plan." IRS Publication 969 (page four) confirms that there is an individual can be covered under multiple high deductible health plans and still be considered an eligible individual. In other words, the Internal Revenue Code specifically and expressly allows individuals to remain eligible under multiple high-deductible health plans even if one plan provides coverage for benefits which are also covered by another plan.

35. Anthem's failure to cite to and consider relevant portions of the Internal Revenue Code and supporting documents denied Plaintiff a full and fair review of his claim.

36. In addition, Anthem is generally operating under a structural conflict of interest or made its specific adverse determinations against Plaintiff under a conflict of interest. The reason Anthem' provided for processing the claims in this dispute unfavorably to Plaintiff is generally applicable to all of Anthem's or its affiliates' high deductible health plans, including ones where Anthem or its affiliate is

Complaint

responsible as both claims administrator and claims payor. If Anthem were to make a benefit determination favorable to Plaintiff, Anthem or its affiliates would be subject to a substantial financial liability. Anthem's apparent conflict of interest is also evidenced by Anthem's failure to cite to and consider relevant portions of the Internal Revenue Code and supporting documents that contradicted its decision when making its appeal determination, its shifting reasoning as Plaintiff asked for more information, and its *post hac* rationalization of its claims processing decision.

**Specific Requests For Relief**

A. Plaintiff requests that this Court to order the Plan to produce all documents, records, and other information relevant to the claimant's claim for benefits at issue in this action.

B. Plaintiff requests that this Court find that the Plan did not have discretion to make its adverse determinations against Plaintiff; or, in the alternative, Plaintiff requests that this Court find that the Plan's adverse determinations were abuses of its discretion.

C. Plaintiff requests that this Court find the Plan is operating under a structural conflict of interest, or that the Plan acted under a conflict of interest when making its adverse terminations against Plaintiff, or both.

D. Plaintiff requests that this Court review the adverse benefit determinations at issue in this action *de novo* and order the Plan to pay for all claims improperly denied under status code 010 or other equivalent status code, as well as any other claims that were partially or fully unpaid for failing to meet the applicable deductible due to the improper denials of these claims.

E. Plaintiff requests that this Court hold that the Plan's attempt to issue adverse claim determinations on claims it had already decided favorably toward Plaintiff are null and void.

Complaint

F.  Plaintiff requests that this Court order the Plan to comply with 29 U.S.C. §1133(1), which requires the Plan to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant" in its adverse benefit determination notices. Plaintiff also requests that this Court order the Plan to "reference specific Plan provision(s) on which the benefit determination is based" in its adverse benefit determination notices, as required by 29 C.F.R. 2560.503-1(g)(1)(ii).

G.  Plaintiff requests that this Court clarify and adjudicate that the Plan does not allow claims to be denied for the reason supplied in the notices of adverse benefit determination at issue in this action and permanently enjoin the Plan from using that reason to deny any claims participants or beneficiaries may make in the future.

H.  Plaintiff requests that this Court order the Plan to pay Plaintiff the costs and expenses of this action as well as attorneys' fees for any legal counsel that may appear on behalf of Plaintiff in the future.

I.  Plaintiff asks this Court provide any other appropriate relief it may deem just and proper in this case.

Dated: 10/29/2014

Signed: _____

Mark Zavislak, *Plaintiff* (*Pro Se*)

Complaint